**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

CRAIG CRAINE,

      Plaintiff,

vs.                                           Case No. 3:07-cv-72-J-32JRK

INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION, LOCAL 1408 AND
JACKSONVILLE MARITIME
ASSOCIATION, INC.,

      Defendants.

## **ORDER**[1]

This case is before the Court on defendant International Longshoremen's Association, Local 1408 ("ILA") and Jacksonville Maritime Association's (JMA) amended motions for summary judgment (Docs. 57, 58), plaintiff Craig Craine's responses (Docs. 59, 60) and JMA and Craine's Stipulation in Lieu of Reply. (Doc. 63.) The Court heard oral argument on the motions February 19, 2009.

**I.    BACKGROUND**

In the Court's July 6, 2007 Order granting in part and denying in part ILA's Motion to Dismiss, the Court set forth some preliminary facts based on plaintiff's

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

complaint. (Doc. 1.) Post-discovery, those facts still appear to be true when the evidence is examined in the light most favorable to plaintiff.

> In the summer of 2005, plaintiff, a [port] laborer and dues paying member of Local 1408, took an examination to qualify as a Gantry crane operator and obtained the ninth highest score out of one-hundred forty-seven applicants who took the exam. In March 2006, plaintiff submitted a grievance to the union that was unrelated to the Gantry crane training. In May 2006, plaintiff continued in the Gantry training program; he passed a required physical and participated in classroom training. About that time, plaintiff's March 2006 grievance was heard and denied.

(Doc. 20 at 2) (citations omitted).

The Gantry crane training program is overseen by the Training Committee, which is jointly administered by JMA (employer) and ILA (union). (Doc. 50, Ex. 15 at 2.) This committee was formed in 1997, and is comprised of the union president and vice-president, JMA's executive director James Gray, and three other employer representatives. (Id., Doc. 50, Ex. 2 at 19-20.) "The Committee determines the number of people that need to be in training, the progress of the participants, whether someone is qualified as an operator, if someone does not need to be in the program anymore due to safety reasons or not being able to catch up, etc." (Doc. 50, Ex. 15 at 2.)

In July 2006, plaintiff was informed that two workers were being trained ahead of him despite not scoring well enough on the 2005 exam to qualify for training. (Doc. 50, Ex. 1 at 38-39.) On August 1, 2006, plaintiff filed a grievance on the issue, but, unbeknownst to him, the Training Committee had already removed him from the

program. (Id. at 102.) "After exchanging correspondence with Local 1408 and the union's district office relating to the inaction on his grievance, plaintiff received a letter from Local 1408's president stating that plaintiff was removed from the training program because of his 'attitude.'" (Doc. 20 at 2-3) (citations omitted).

Plaintiff has brought a so-called "hybrid" action against JMA and ILA arising out of his removal from the Gantry crane training program. ILA and JMA have now moved for summary judgment. As discussed below, plaintiff must create an issue of fact both as to the conduct of the employer and the union for this "hybrid-claim" to reach the jury.

## II.     APPLICABLE STANDARD[2]

"It has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement." See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 163 (1983). However, an employee must typically

---

[2] Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that establish the absence of any genuine material, factual dispute." Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003) (internal quotations omitted). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). In determining whether summary judgment is appropriate, a court must draw inferences from the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts in that party's favor. Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005).

exhaust any grievance or arbitration remedies provided by the collective bargaining agreement ("CBA") before bringing suit. Id. A labor union has a statutory duty of fair representation "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." See Vaca v. Sipes, 386 U.S. 171, 177 (1967). However, "[a] union's broad discretion in prosecuting grievance complaints includes not only the right to settle the dispute short of arbitration but also to refuse to initiate the first steps in the appeal procedure when it believes the grievance to be without merit." See Turner v. Air Transp. Dispatchers' Ass'n, 468 F.2d 297, 300 (5th Cir. 1972). If the union breaches its duty of fair representation by acting in a "discriminatory, dishonest, arbitrary, or perfunctory fashion," DelCostello, 462 U.S. at 164, the employee may sue both the employer and the union "notwithstanding the outcome or finality of the grievance or arbitration proceeding." Id. (citations omitted).

In this situation, "'[t]he suit against the employer rests on § 301 [of the Labor Management Relations Act, 29 U.S.C. § 185], since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act.'" See Aldred v. Avis Rent-A-Car, 247 F. App'x 167, 172 (11th Cir. 2007) (citing DelCostello, 462 U.S. at 165). "This type of interdependent lawsuit, which consists of two causes of action, is known as a 'hybrid

4

§ 301/fair representation claim.'" Id. To prevail, plaintiff must prove both that (1) the employer breached the CBA and (2) the union breached its duty of fair representation. Id.

## III. Discussion

Plaintiff's hybrid § 301/fair representation claim against JMA and ILA alleges that JMA breached the CBA by (1) removing plaintiff from the Gantry crane training program; and (2) placing two individuals with lower test scores in the program ahead of plaintiff. The claim against ILA alleges that the union's decision not to grieve plaintiff's removal from the crane training program was made arbitrarily or in bad faith.

### a. Plaintiff's § 301 claim against JMA

Plaintiff asserts that JMA breached the CBA by removing him from the Gantry crane training program and placing two individuals with lower test scores in the program. However, plaintiff must first establish that the CBA prohibited these acts before he can argue that a genuine issue of material fact exists on the question of breach. To that end, plaintiff asserts that JMA's actions were prohibited by both an express provision of the CBA and an implied term evidenced by the customs and practices of JMA and ILA.

#### i. Express provision

Plaintiff's argument that he is protected by an express provision of the CBA is unpersuasive. Plaintiff cites Article V, Section 2 of the Master Contract, which reads

5

in full:

> Employees who operate or otherwise handle, or are selected to operate or otherwise handle, wheeled equipment, cranes or other moving equipment or who perform maintenance or clerical work shall receive such training as may be required from time-to-time by Management and shall be subject to such recertification requirements as shall be established by Management and the ILA, including a physical examination designed by Management and the ILA to demonstrate the employee's ability to perform the essential functions of the employee's job.

(Doc. 50, Ex. 4 at 5-6.) This provision cannot be read in favor of plaintiff. First, once plaintiff was removed from the Gantry crane training program he was no longer "selected to operate or otherwise handle . . . cranes." Id. Further, when read as a whole, this provision speaks to what training management may require of its employees, not the training employees can insist on from management. The provision does not provide any rights to the employees; rather, it speaks to the employee participating in training that <u>management requires</u>. Accordingly, the Court finds that there is no express provision of the CBA giving plaintiff a cause of action in these circumstances.

### ii. Implied terms

Because there is not an express provision of the CBA barring JMA's conduct, plaintiff must show that JMA and Local 1408 created an implied term to the CBA that protected plaintiff's right to training and/or prohibited individuals with lower test scores from being trained before plaintiff. The existence of implied terms in collective

6

bargaining agreements is a universally accepted premise recognized by the United States Supreme Court and accepted by both parties. "A collective bargaining agreement is not an ordinary contract for the purchase of goods and services, nor is it governed by the same old common-law concepts, which control such private contracts." Transportation-Communication Employees Union v. Union Pac. Ry. Co., 385 U.S. 157, 160-161 (1966). A collective bargaining agreement "is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate." United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 578 (1960). Interpreting a collective bargaining agreement requires courts "to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements." Transportation-Communication Employees Union, 385 U.S. at 161.

Plaintiff primarily relies on the past practices of the Training Committee and its administration of the training program in an attempt to establish an implied term of the CBA. "Past practices rise to the level of an implied agreement when they have 'ripened into an established and recognized custom between the parties.'" Bhd. Ry. Carmen v. Mo. Pac. Ry. Co., 944 F.2d 1422, 1429 (8th Cir. 1991) (quoting Alton & S. Lodge No. 306 v. Alton & S. Ry., 849 F.2d 1111, 1114 (8th Cir. 1988)). Generally, "[t]o be binding, a trade custom or usage must be so well known, uniform, long-established, and generally acquiesced in so as to induce the belief that the parties

contracted with reference to it, nothing in their contract to the contrary." See Georgia-Pacific Corp. v. Local 27, United Paperworkers Int'l Union, 864 F.2d 940, 946 (1st Cir. 1988) (quoting Dahly Tool Co. v. Vt. Tap & Die Co., 742 F.2d 311, 314 (7th Cir. 1984)); see also Maples v. Ill. Bell Tel. Co., 594 F. Supp 2d 937, 943 (N.D. Ill. 2009) ("The three elements of time, knowledge, and acquiescence have been found essential to the determination of a custom or practice.").

There is no custom or practice supporting plaintiff's assertion that the CBA impliedly prohibits individuals from selection for training based on factors other than test scores. Since the start of the training program only twenty-seven individuals were deemed eligible for the training program based on their test scores: thirteen based on a 1997 test and fifteen based on a 2005 test.[3] Although these individuals were generally placed into the Gantry crane training program in order of their test scores, some were passed over or removed from the program for a variety of reasons, including inability to obtain a seniority card, failing a drug test, and insufficient progress within the program. (Doc. 50, Ex. 1 at 94:11-14; 94:23-25, 95:1-2; Doc 50, Ex. 3 at 32:8-20.) Additionally, six individuals either voluntarily withdrew from the training program or opted not to participate. See e.g. Doc. 50, Ex. 3 at 29-30.

---

[3] These numbers come from the record provided to the Court and are believed to be accurate. It appears that one individual qualified under both tests but opted not to train based on the 1997 test.

8

Further, three individuals were selected for training without regard to their test score.[4]

(Id. at 100-106). James Gray, Executive Director for JMA, states:

> If someone is already certified and partially trained, the training time and cost is much less. The Port had announced sometime this year that a major shipping line is moving to Jacksonville, which will cause us to more than double our crane operators. Since it takes months to train them we needed all the advantage we can have to get more qualified crane operators. This is the reason why the 3 certified people were brought in the program since they were already on the list. . . . The certified trainers don't need classroom or familiarization training as they already completed this stage.

(Doc. 50, Ex. 15 at 4.)

When looked at as a whole, the past practice of the Training Committee shows: (1) test scores generally establish priority for training; and (2) the Committee reserves the right to ignore that priority and either select or remove individuals from the training program based on other factors. The general reliance of JMA and ILA on test scores to determine training priority does not *ipso facto* provide a worker the right to be trained in the order of the worker's test score. The attempt to create an implied term of the CBA establishing such a right based on the past practice is without merit as a matter of law. Accordingly, the Court will grant summary judgment on plaintiff's claim that JMA's decision to select workers for training "out of turn" violated the CBA.

On the other hand, the Court finds that there is a genuine issue of material fact on the question of plaintiff's removal from the training program. The past practices

---

[4] Only two of these individuals were actually trained.

of JMA and ILA established an implied term of the CBA applicable to this case. The establishment and ten-year history of the Training Committee, constituted of both employer and employee members, the way in which the Training Committee conducted its business (with, for example, minutes being kept) and the use of test scores to help determine training priority are evidence of an implied term of the CBA regarding the method of selection and retention of employees in the training program.[5] While the Court leaves the exact definition of that implied term for another day, its essence is that workers are entitled to at least some minimal type of regularity in the Training Committee's process of selecting and retaining individuals in the training program. Given the highly unusual circumstances under which plaintiff was removed from the program, there is an issue of material fact as to whether the employer breached this implied term of "regularity." Nevertheless, the nature of a § 301 "hybrid" claim requires that the Court also find issues of fact regarding plaintiff's claim against ILA to defeat summary judgment.

### b. Plaintiff's claim against ILA

Plaintiff asserts that the union breached its duty of fair representation through its handling of plaintiff's August 1 grievance. Considering the evidence as a whole (including the union's failure to contest plaintiff's removal, the inconsistent deposition

---

[5] Indeed, in its summary judgment papers, ILA refers to the Training Committee as a "formalized mechanism" to achieve a "consensus-based decision making process." (Doc. 58 at 2-3.)

10

testimony of Vincent Cameron, the lack of evidence concerning the decision to remove plaintiff or process his grievance and the union's failure to even notify plaintiff that he had been removed from the Gantry crane training program), there is a genuine issue of material fact as to whether the union breached its duty of fair representation to plaintiff. Accordingly, having created issues of fact on both his claim against JMA and ILA, plaintiff has defeated the motions for summary judgment.

### c. Damages

Defendants have also moved for summary judgment on damages.

Plaintiff is not entitled to recover damages for emotional distress in this case. "[E]motional distress damages are awarded in fair representation suits only in exceptional circumstances of extreme misconduct." See Doc. 20 at 5 (collecting cases). Plaintiff has produced no evidence of the type of conduct necessary to recover emotional distress damages. His argument on the issue, in its entirety, is as follows: "Based on the number of material facts in dispute as to the union's conduct, as described above, it would be inappropriate for the Court fo find as a matter of law at this point, that Plaintiff is not entitled to recover emotional distress damages." (Doc. 60 at 16.) Considering that plaintiff was on notice early in this case that emotional distress damages would be an issue, this argument is insufficient to defeat summary judgment. Plaintiff cannot recover emotional distress damages in this case as a matter of law.

The Court's finding that the Training Committee's decision to select workers for training "out of turn" was permissible under the CBA, along with the fact that plaintiff has since been reinstated into the Gantry crane training program, leads the Court to have serious doubts as to whether plaintiff can prove any actual damages. However, plaintiff's potential entitlement to nominal damages and "attorney's fees" as compensatory damages for ILA's breach of its duty of fair representation is sufficient to defeat summary judgment on that issue. See Bowen v. U.S. Postal Serv., 459 U.S. 212, 236, n. 6 (1983) ("Attorney's fees and other litigation expenses have been assessed as damages against unions, because such damages measure the extent by which the union's breach of duty adds to the difficulty and expense of collecting from the employer."). It is hereby

**ORDERED**:

1. Defendant Jacksonville Maritime Association, Inc.'s Amended Motion for Summary Judgment (Doc. 57) and Defendant International Longshoremen's Association, Local 1408's Amended Motion for Summary Judgment (Doc. 58) are **GRANTED IN PART AND DENIED IN PART**, as stated in this Order.

2. This case is **SET** for a telephone status conference on **Monday, May 4, 2009 at 5:00 p.m.** to determine the course of future proceedings. Counsel for plaintiff is directed to initiate the telephone conference call by calling counsel for defendants and

then calling the Court's polycom telephone line, (904) 549-1949.[6]  The call should be placed to the Court five minutes prior to the scheduled hearing time.

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of March, 2009.

                                        TIMOTHY J. CORRIGAN
                                        United States District Judge

jcd.

Copies:

counsel of record

---

[6] To maximize the quality of the audio-connection, counsel are requested not to use cell phones or speaker phones during the hearing.